Merrimack,
Feb. 3, 1920.

### CHARLES B. ENSIGN v. MARTIN CHRISTIANSEN & a.

In an action upon negotiable paper, when it is shown that the title of any person who has negotiated the paper was defective, the burden is on the holder to prove that he or some person under whom he claims acquired title as holder in due course.

An indorsee for value before maturity does not stand in any better position than the payee in so far as defences of which the indorsee had notice are concerned.

The payee of a note, an unregistered foreign corporation incapable by Laws 1913, c. 187, s. 3, to bring suit in this state, transferred it to the plaintiff for value before maturity. The burden was upon the plaintiff to prove that he had no notice at the time he took the note that the payee could not maintain action thereon in the state court, and whether under the circumstances the plaintiff was a purchaser in good faith was a question of fact for the jury.

Knowledge of facts which would cause the ordinary man to make inquiry and failure to take such action warrant the finding that the purchase of negotiable paper was not in good faith.

Failure to collect of the indorser, from whom the plaintiff took negotiable paper and with whom he customarily did business, and resorting to a suit against the maker resident in a distant state, taken in connection with other evidence, warranted the conclusion that the plaintiff had not sustained the burden of proof.

ASSUMPSIT, by the indorsee of a note which the defendants gave the Night Commander Lighting Company, a Michigan corporation, in payment for a lighting plant which it installed on their premises in the town of Bow.

Trial by jury and verdict for the plaintiff. Transferred from the October term, 1918, of the superior court by *Sawyer,* J., on the

defendants' exceptions to the court's charge and to the refusal to charge.

The defendant requested the following instruction: "If the plaintiff took the note in controversy with knowledge or notice that the Night Commander company could not maintain an action thereon by reason of having failed to comply with the laws of the state of New Hampshire requiring the registration of foreign corporations, then your verdict must be for the defendants." So much of the charge, of the requests and of the evidence as is relevant to other exceptions appears in the opinion.

*David F. Dudley* (by brief and orally), for the plaintiff.

*Robert W. Upton* (by brief and orally), for the defendants.

YOUNG, J. The defendants asked the court to charge that if the plaintiff knew when he took this note that the company had not complied with Laws 1913, c. 187, s. 1, he could not recover. Although s. 3 of this act provides in substance that the failure to comply with the provisions of s. 1, shall not affect the validity of a contract a corporation makes, it also provides that the corporation shall not maintain an action on the contract in the courts of this state, until it has complied with the provisions of that section. The company, therefore, cannot maintain an action on this note in the courts of this state even if the note is valid, for it has not complied with the provisions of s. 1. An indorsee for value before maturity does not stand in any better position than the payee, in so far as defences of which he had notice are concerned. By notice is intended either "actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." Laws 1909, c. 123, s. 56. It can be found that one who knew of facts that would have put the ordinary man on inquiry and failed to do what such a man would have done to ascertain whether there was a defect in the note was not acting in good faith. Whether the plaintiff knew of such facts and, if he did, whether his failure to make inquiry constitutes a lack of good faith are questions of fact pure and simple. The requested instruction should therefore have been given, if there was evidence tending to prove that the ordinary man with the plaintiff's knowledge of the company and its method of business would have done more than he did to ascertain whether the company could maintain an action on this note in the courts of this

state before taking it as collateral for a loan; for as it appeared that the payee could not maintain this suit in the state court the burden was on him to prove among other things that he had no notice at the time he took the note, that the company could not enforce it in the courts of this state. Laws 1909, c. 123, s. 59. The plaintiff knew that the company was a Michigan corporation and notwithstanding he testified that he understood the lighting plant was delivered to the defendants in Michigan it can be found that he knew it was delivered to them in this state. It is a matter of common knowledge that most states require foreign corporations to register before doing business within their boundaries. It cannot be said therefore that the ordinary man in the plaintiff's situation would not have done more than he did to ascertain whether the company could enforce the note in the courts of this state before accepting it as collateral, if he were making the loan on the defendants' credit. *Security Nat. Bank* v. *Porter, ante,* 344; *Mechanics Sav. Bank* v. *Feeney, ante,* 267.

The court, subject to the defendants' exception, instructed the jury that the fact the plaintiff had not sued the company would not warrant it in finding that he knew at the time he took the note that there was a defence to it. Although the plaintiff testified that he never had an account with the company, his testimony as a whole tends to a different conclusion, for it shows that for several years he had been loaning the company money from time to time and taking notes it received from its customers as collateral security for the loans. In short, it can be found that the plaintiff was in the habit of making advances to the company on notes it took from its customers, collecting them as they became due, and giving it credit for the amounts so collected. There is nothing in the case which even tends to the conclusion that it was necessary for him to bring this suit in order to protect himself from loss, for notwithstanding he testified that there had been no time since he made this loan when the company did not owe him much more than the amount of the notes it gave him at that time, he did not say that he was not amply secured, for all the money he had loaned the company. If that is the fact, it is improbable that he would have incurred the expense incident to prosecuting this suit, if he were merely a holder in "due course," that is, it is improbable that he would have brought this suit if he were merely holding the note as security, for as we have seen there is nothing in the case to show that he could not have collected all the money the company owed him without incurring the expenses inci-

dent to this proceeding. The court, therefore, should have told the jury that the fact the plaintiff had not sued the company was not an answer to this suit as a matter of law, but that fact when taken in connection with the other evidence in the case, would warrant a finding that the plaintiff had failed to sustain the burden imposed on him by Laws 1909, c. 123, s. 59 of proving that he acquired the title as a "holder in due course"; for it is not customary for an in-dorsee to incur the expense incident to enforcing a note in another state when he can collect all the money due him from the indorser without trouble or expense to himself.

*Exceptions sustained.*

All concurred.